[No. D034097. Fourth Dist., Div. One. May 1, 2000.]

In re MATTHEW Z., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
FRANCISCO Z., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and III of the Discussion.

## COUNSEL

Suzanne F. Evans, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Minor.

## OPINION

**HALLER, J.**—Francisco Z. (Father) appeals from a judgment terminating his parental rights to his son, Matthew. Father contends the court erred by (1) denying his request for a hearing on his modification motion; (2) failing to make findings under the federal Indian Child Welfare Act (ICWA) (25 U.S.C. § 1912(f));[2] and (3) failing to find a beneficial relationship existed between Father and Matthew. We reject these contentions and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

Matthew was born in August of 1997. Four days later, the San Diego County Health and Human Services Agency (Agency) filed a dependency petition, alleging both parents had mental and/or developmental disabilities rendering them unable to provide care for Matthew. The evidence showed

---

[2]We shall refer to title 25 United States Code section 1912 as ICWA section 1912. All other statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3]Because Matthew's mother (Mother) did not appeal, we discuss facts relating to her only to the extent they are relevant to Father's appeal.

Mother is "mildly retarded" and has a history of alcoholism, depression and suicide attempts. Father is also "mildly retarded," and has various psychological problems.

At the initial detention hearing, the juvenile court ordered Matthew placed in foster care, and gave the social worker discretion to detain Matthew with his paternal grandmother (Grandmother). Grandmother initially said she would be willing to move in with the parents and care for Matthew, but then changed her mind. Grandmother said she suffered from arthritis, and the parents "can hardly take care of themselves" and do not treat her well. Grandmother expressed concern that if she moved into the parents' home, the parents would "throw her out" and "try and keep the baby."

In January 1998, Matthew was placed with Mother's cousin, Fannie T., in the Los Angeles area. Fannie, like Mother, is a Navajo Indian. Fannie speaks fluent Navajo and "is well connected" to the Native American community.

In February 1998, the court assumed jurisdiction over Matthew, and ordered Matthew's continued placement with Fannie. The psychologist who examined the parents opined that their physical and intellectual abilities prevented them from independently raising a child. The disposition hearing was postponed until necessary information could be received from the Navajo Nation.

During the next several months, Father and Mother occasionally visited Matthew at Fannie's home, but they continued to show an inability to care for Matthew. In particular, Father would often become "visibly frustrated." He would visit for only very short periods, saying he needed to take care of his dog in San Diego. Father did not telephone Fannie to check on his son's welfare, even though he was told to do so.

In July 1998, the court determined Matthew was eligible for enrollment with the Navajo Nation and found the ICWA applied. Matthew had some developmental delays with cerebral palsy symptoms.

In an August 1998 report, an Agency social worker concluded that although both parents "care deeply" for Matthew, they are unable to effectively and safely care for Matthew. The social worker opined that "returning the minor . . . to his parents . . . would place the minor at severe physical, emotional and developmental risk."

On November 17, 1998, the court held a combined disposition and six-month hearing. A Navajo Nation social worker, whom the parties stipulated was an expert witness, submitted a letter agreeing that the parents were

unable to provide day-to-day care for Matthew. The social worker recommended that Matthew remain in his current placement, and that the state agency seek either "clanship adoption" or "open adoption" permitting Fannie, Matthew, and the parents to live in the same home. The social worker said the Navajo Nation did not seek to intervene in the action.

Based on this letter and other Agency information, the court found by clear and convincing evidence: (1) returning Matthew to his parents' custody would substantially endanger his physical health, and there were no reasonable means by which the child's physical health could be protected without removal; (2) active efforts had been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the family and these efforts had proved unsuccessful; and (3) custody of the child by the parents was likely to result in serious emotional or physical danger to the minor. The court continued Matthew's placement with Fannie.

After the hearing, the parents moved to the Los Angeles area and began living with Fannie and Matthew. But within one or two weeks, on December 1, 1998, the parents returned to San Diego County. Father had little or no contact with Matthew after that time. Father said he did not wish to visit Matthew at Fannie's house because he felt uncomfortable. Father was also not in therapy and refused to attend parenting classes.

At the March 1999 12-month hearing, the Agency recommended the court terminate reunification services and schedule a section 366.26 hearing. In support, the Agency submitted a March 8, 1999 declaration from Navajo Nation social worker Lorraine Nez, in which she opined that: (1) "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of this Indian family," but these services have "proved unsuccessful in reunifying this Indian family"; and (2) "custody of the minor by [Mother and Father] is likely to result in serious emotional or physical damage to the minor." Nez said the parents' "level of intellectual and physical ability preclude their raising a child independently." Nez concluded by recommending that Matthew remain with Fannie "until reunification [was in Matthew's] best interest . . . ." Father did not appear at the 12-month review hearing, but authorized his counsel to submit on the Agency's recommendations.

After reviewing the Agency reports and the Navajo Nation social worker's declaration, the court found it would be detrimental to Matthew's physical well-being to return to his parents' custody, and it was not probable Matthew would be returned within the next six months. (§ 366.21, subds. (f) & (g)(1).) The court also made the analogous finding required under the ICWA

before parental rights may be terminated. (See ICWA § 1912(f).) In particular, the court found beyond a reasonable doubt that the "continued custody of Matthew by one or both of the parents is likely to result in serious emotional or physical damage to Matthew." (See *ibid.*) The court terminated reunification services and set a section 366.26 hearing for August 1999.

Two weeks before the section 366.26 hearing was scheduled to begin, Father filed a section 388 petition seeking to vacate the order removing Matthew from the parents' custody. The sole basis for the petition was Grandmother's alleged willingness to reside with the parents on a full-time basis and care for Matthew. After an offer of proof and the court's direct inquiry of Grandmother, the court declined to set an evidentiary hearing for Father's petition.

On August 20, 1999, the court held the section 366.26 hearing. The Navajo Nation received notice of the hearing, but did not send a representative or submit supplemental information. The sole witness at the hearing was the Agency's adoptions social worker Elizabeth Morgan. Morgan testified that Matthew was adoptable, and that although each parent had a relationship with Matthew, the relationship did not constitute a "beneficial" one precluding adoption under the dependency laws. (See § 366.26, subd. (c)(1)(A).) Morgan further testified she had since spoken with a representative of the Navajo Nation, who expressed support for adoption in this case.

During the hearing, the court noted it had already made the ICWA section 1912(f) detriment finding. Father's counsel responded that the finding should "be made again today" particularly because "additional visitation and additional things . . . have happened between [the 12-month hearing] and today." The court denied this request, stating it had made the finding at the 12-month hearing, the hearing was "close in time" and there was "no need to address it again."

At the conclusion of the hearing the court found by clear and convincing evidence Matthew was likely to be adopted and that none of the statutory exceptions to adoption were applicable. The court terminated parental rights.

DISCUSSION

I. *Denial of Section 388 Hearing*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

\*See footnote 1, *ante*, page 545.

## II. *Compliance with the ICWA*

■ Father contends the court erred by failing to make a factual finding under ICWA section 1912(f) at the section 366.26 hearing.[5]

The ICWA seeks to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families . . . ." (25 U.S.C. § 1902; see *In re Michael G.* (1998) 63 Cal.App.4th 700, 708-709 [74 Cal.Rptr.2d 642].) Those standards require a state court to make certain findings before the court may order foster care placement or terminate parental rights. (ICWA § 1912(e) & (f).) Before either action may be taken, the court must make a determination based on the testimony of a qualified expert witness "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (*Ibid.*) Under ICWA section 1912(f), the court must make this finding "by evidence beyond a reasonable doubt" before parental rights may be terminated.

It is undisputed the juvenile court properly made these detriment findings at the disposition hearing and at the 12-month hearing when it scheduled the selection and implementation hearing under section 366.26. Father submitted on the evidence supporting each of these findings, and has never challenged the sufficiency of the evidence to support the findings. Father instead contends the court violated ICWA section 1912(f) when it failed to make this finding yet again at the section 366.26 hearing when the actual termination order was made.

---

[5]ICWA section 1912 states in relevant part:

"(c) Each party to a foster care placement or termination of parental rights proceeding under State law involving an Indian child shall have the right to examine all reports or other documents filed with the court upon which any decision with respect to such action may be based.

"(d) Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

"(e) No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

"(f) *No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.*" (Italics added.)

Because the ICWA is federal law, it does not identify the particular California hearing at which the ICWA section 1912(f) finding must be made. The statute states only that "[n]o termination of parental rights may be ordered" in the absence of the detriment finding. (ICWA § 1912(f).) But based on the family-protective policies underlying the ICWA, it is reasonable to assume the ICWA section 1912(f) finding must be made at, or within a reasonable time before, the termination decision is made. Otherwise, it would be possible for a state to terminate parental rights when the current circumstances do not show a return to the parent's custody would be detrimental to the child's well-being. This would violate the words and spirit of the ICWA.

But this does not mean in California that the ICWA section 1912(f) finding must be made simultaneously with the termination decision at the section 366.26 hearing. To understand this conclusion requires an appreciation of our state's dependency process.

In California, the termination decision is not made at one single hearing. Instead, as our Supreme Court has explained, the decision results from a multistep review process. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 247-250 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) After a court assumes jurisdiction over a juvenile, the child may be removed from a parent's custody only upon a showing by clear and convincing evidence that continued custody will be detrimental to the child. (*Id.* at p. 248.) Then, at each six-month review hearing, there is a statutory presumption the child will be returned to parental custody unless the social services agency proves by a preponderance of the evidence " 'the return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor.' " (*Id.* at p. 249.) If the court makes this finding at the 12-month review hearing, and finds that there is no substantial probability of return to the parent in the next six months, the court shall "terminate reunification efforts and set the matter for a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan." (*Ibid.*) "If the child is not returned to the parents at the 18-month review, the court must set the matter for a section 366.26 hearing." (*Ibid.*)

The selection and implementation hearing must "be heard within 120 days of the hearing from which it was set. [Citation.]." (*Cynthia D. v. Superior Court, supra,* 5 Cal.4th at p. 249.) While the actual termination order may result from the hearing, the focus of the hearing is not on parental unfitness. (*Id.* at p. 254.) Instead, because the " 'critical decision[s] regarding parental rights . . . [and] that the minor cannot be returned home' " were made at the earlier review hearing, the issues at the section 366.26 hearing are generally limited to the questions whether the child is adoptable and whether there is

a statutory exception to adoption. (5 Cal.4th at pp. 250, 254.) Thus, unlike the termination hearings in most states, the purpose of the final termination hearing in California "is not to accumulate further evidence of parental unfitness and danger to the child, but to begin the task of finding the child a permanent alternative family placement." (*Id.* at p. 253, fn. omitted.)

Under this statutory scheme, it makes sense for the juvenile court to make the ICWA section 1912(f) finding at the final review hearing where the court sets the matter for a determination on a permanent plan. The findings made at this review hearing form the factual basis for a later termination decision. Moreover, the ICWA section 1912(f) finding parallels the findings that must be made under state law at the final review hearing. Under state law, a court may order a section 366.26 hearing at the 12-month or 18-month hearing only if it finds the return of the minor to the parent's custody "would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§§ 366.21, subds. (f) & (g)(1), 366.22, subd. (a).) Similarly, under the ICWA, a state court may not terminate parental rights unless it has found based on the "testimony of qualified expert witnesses, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." (ICWA § 1912(f).) The facts underlying these determinations will generally be identical; the primary difference is the level of proof—under the ICWA the state must prove the detriment beyond a reasonable doubt and with a qualified expert witness, whereas under state law the state need only prove the detriment by a preponderance of the evidence.

Thus, to avoid duplication of evidence and resources, in most cases the court will address the ICWA section 1912(f) finding at the same time it makes the referral order and schedules a section 366.26 hearing. The issue then becomes whether federal law requires that a California court *repeat* this finding four months later at the section 366.26 hearing.

We do not believe Congress would have intended this result. Where the circumstances preventing the return of the child remain unchanged and the time between the hearings is not substantially longer than the 120-day statutory period, there is no need to make an additional finding because the facts supporting the finding at the referral hearing will apply equally to the section 366.26 hearing. The critical point is that under federal law, parental rights may be terminated once the ICWA section 1912(f) finding is made (assuming all other requirements have been met). (ICWA § 1912(f).) In most states this would occur at the final review hearing. (See *K.N. v. State* (Alaska 1993) 856 P.2d 468; *Matter of R.M.M.* (Minn. 1982) 316 N.W.2d 538.) But to accord additional protection to the child, California provides an

additional period of 120 days to permit the social service agency to determine the appropriate recommended permanent plan for the child. Further, this state provides an escape mechanism where if there are changed circumstances between the time of the referral hearing and the section 366.26 hearing, the parent may petition for a modification to the prior referral order. (§ 388.) Where, however, there are no changed circumstances, it would be an idle act for a court to repeat the ICWA section 1912(f) finding at the section 366.26 hearing—which is focused solely on finding a proper permanent home for the child *other than with the parents.*

Moreover, if we were to require a court to make a second ICWA section 1912(f) finding in every case, this would conflict with California's appellate review procedures requiring prompt resolution of a child's status. Under California law, a parent is entitled to immediate writ review of a court's order setting a section 366.26 hearing, which includes the right to challenge a finding that it would be detrimental to return the child to the parent's custody. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 39.1B.) The parent may not thereafter challenge this decision on appeal from the section 366.26 order. (Cal. Rules of Court, rule 39.1B.) But if we were to conclude a court must make the ICWA section 1912(f) detriment finding at the section 366.26 hearing, this would raise difficult issues as to whether the parent would have the opportunity to avoid the required writ procedures and reassert the identical detriment issue (with a different underlying proof standard) when appealing from the section 366.26 order, or whether the parent would be precluded from raising this challenge because the issue would (or should) have already been raised in the earlier writ proceeding. (*See In re Michael G., supra,* 63 Cal.App.4th at pp. 712-713, fn. 9.)[6]

Finally, we disagree with Father's contention that the phrase "such proceeding" in ICWA section 1912(f) means the finding must be made at the section 366.26 hearing. The phrase is ambiguous when viewing the entire act. Read in context of the ICWA and California's statutory scheme, the phrase does not necessarily refer to the hearing at which the final termination decision is made.

In sum, we conclude a California court must make the ICWA section 1912(f) finding before it terminates parental rights. The finding generally

---

[6]In *In re Michael G.,* we noted in dicta that a court should make an ICWA section 1912(d) finding (relating to the adequacy of rehabilitative efforts) at the final referral hearing because this would provide writ review of that decision and " 'ensure that the [section 366.26] hearing is not infected with reversible error even before it commences.' " (*In re Michael G., supra,* 63 Cal.App.4th at p. 713, fn. 9.) Those comments are consistent with the approach we take in this case.

should be made at the final review hearing at which a section 366.26 hearing is scheduled. If this finding was made, a court need not readdress the issue at the section 366.26 hearing, unless the parent presents evidence of changed circumstances or shows the finding was stale because the period between the referral hearing and the section 366.26 hearing was substantially longer than the 120-day statutory period. On the other hand, if the ICWA section 1912(f) finding was not made at the final review hearing and the court intends to terminate parental rights, the ICWA section 1912(f) finding must be made at the section 366.26 hearing.

Under these principles, the court here did not err in refusing to readdress the ICWA section 1912(f) issue at the section 366.26 hearing. The record before the court showed there was no need to make the finding for a second time. There had been no material changes between March 1999 and August 1999. After December 1998, Father saw Matthew only once, in court, while Matthew was asleep. There was no showing that Father's parenting skills had improved or that he was able to be a parent to Matthew. Moreover, as discussed above, there was no showing Father was willing or able to live with another responsible caretaker with whom Matthew could live. Fannie was apparently willing to permit Father to live with Matthew in her house, but Father refused this living arrangement.

Further, the Navajo Nation received notice, on two occasions, of the setting of the section 366.26 hearing. If the Navajo Nation wanted to present additional information or change its recommendations as to the detriment finding, it had ample opportunity to do so. It did not do so and thus, on this record, the court could reasonably infer the Navajo Nation had not changed its position.

Without some showing that Father could safely parent Matthew or that the Navajo Nation would have made a different recommendation five months later, the court was not required to repeat its ICWA section 1912(f) finding at the section 366.26 hearing before it terminated parental rights.

III. *Exception to Adoption*\*

. . . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote 1, *ante*, page 545.

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 19, 2000.